UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FUJIFILM SONOSITE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE IMAGING SPECIALISTS GROUP, LLC and JAMES WINZEY, <br><br> Defendants. | NO. 2:13-cv-983 RSM <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Motion for Partial Summary Judgment by Plaintiff, Fujifilm Sonosite, Inc. ("Fujifilm"). Dkt. # 21. Fujifilm moves for summary judgment on its claims for breach of contract, for account stated, and for breach of guaranty, as well as for prejudgment interest, costs, and attorney's fees. Defendants, The Imaging Specialists Group, LLC ("ISG") and James Winzey ("Winzey"), have failed to file a brief in opposition after being granted several extensions by the Court. Having considered Plaintiff's Motion and the relevant record and for the reasons stated herein, the Court grants summary judgment on Plaintiff's claims.

**Factual and Procedural Background**

Plaintiff Fujifilm brought this suit under this Court's diversity jurisdiction in June 2013 against Defendants ISG and its Chief Executive Officer James Winzey for breach of contract on two executed promissory notes and for failure to timely pay invoiced amounts for various products. *See* Dkt. # 1. Fujifilm asserts the following factual account, which, in the

absence of a response in opposition by Defendants, the Court considers undisputed for the purposes of Plaintiff's summary judgment motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party…fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…consider the fact undisputed for purposes of the motion"); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) ("If there is a failure to respond, the Rule 'authorizes the court to consider a fact as undisputed.'") (quoting Fed. R. Civ. P. 56(e)(2)).

Fujifilm is a manufacturer of portable ultrasound medical devices (the "Products"). Commencing in 2007, Fujifilm appointed ISG as a non-exclusive distributor of the Products, in the medical market only, within a territory comprising Columbia, Venezuela, and Ecuador. Dkt. # 22, ¶ 3. Fujifilm entered into Authorized Distribution Agreements with ISG each year from 2007 to the present. *Id.* at ¶ 5. Under the terms of the Agreements, ISG was required to meet specified minimum purchase requirements with respect to the Products and to pay for Products ordered at specified prices. *Id.* at Ex. A, ¶¶ 3.1-3.2. Pursuant to the Agreements, ISG ordered Products, which Fujifilm delivered to ISG. *Id.* at ¶ 7. For each purchase, Fujifilm sent ISG invoices detailing the Products purchased and the payment due. *Id.* Commencing in January 2009, Fujifilm also periodically approved purchases by ISG on credit evidenced by promissory notes payable to Fujifilm, with principal and interest payable on a monthly basis. *Id.* at ¶ 10; Dkt. # 15 ("Answer"), ¶ 12.

On or about March 29, 2011, ISG executed and delivered to Fujifilm a promissory note in the principal amount of $1,529,346.67 (the "2011 Note") in exchange for Products. Dkt. # 22, ¶ 11 & Ex. B; Answer at ¶ 14. The parties agreed in advance to a payment schedule for the 2011 Note. *Id.* at Ex. B, p. 7. Under the 2011 Note, ISG agreed to pay the outstanding principal, plus interest at the rate of 10% per annum, in 24 consecutive monthly installments commencing in April 2011 and ending in April 2013, in accordance with the agreed payment schedule annexed to the 2011 Note. *See id.* at ¶ 12; *id.* at Ex B, p. 7.

On or about March 1, 2012, ISG executed and delivered to Fujifilm a second promissory note in the principal amount of $2,029,182.02 (the "2012 Note") in exchange for

Products. *Id.* at ¶ 13 & Ex. C; Answer at ¶ 16. Under the 2012 Note, ISG agreed to pay the outstanding principal, plus interest at the rate of 11% per annum, in 18 consecutive monthly installments commencing in March 2012 and ending in August 2013, in accordance with the agreed payment schedule annexed to the 2012 Note. Dkt. # 22, ¶ 14; *id.* at Ex. C, p. 6.

Under the 2011 and 2012 Notes, ISG is in default if ISG "shall fail to pay any sum due and owing on the day such payment is due under [the Notes] and such failure continues for five (5) days after the payment is due." *See id.* at Ex. B, ¶ 4; *id.* at Ex. C, ¶ 4. In the event of default, "all sums due and owing and to become due and owing hereon shall, at the option of [Fujifilm], become immediately due and payable," and the entire principle and balance shall bear interest at the legally allowable rate. *Id.* at Ex. B, ¶¶ 4, 8; *id.* at Ex. C, ¶¶ 4, 7. Each of the Notes further provides that ISG shall be liable for all costs, expenses, and fees incurred by Fujifilm in enforcing the Notes. *Id.* at Ex. B., ¶ 14; *id.* at Ex. C, ¶ 13.

In addition to the outstanding amounts owed under the Notes, ISG owes Fujifilm the sum of $2,110,047.31 for Products purchased but not paid by ISG (the "Accounts Receivable"). *Id.* at ¶ 17; Dkt. # 15, ¶ 20. The Accounts Receivable balance is comprised of principal amounts invoiced to ISG for Products and services delivered ($2,147,834.37), plus interest ($22,152.89), minus allowable credits for items such as payments received, service returns, and marketing allowances ($59,939.95). Dkt. # 22, ¶ 17; *id.* at Ex. E. Fujifilm invoiced ISG for all the items constituting the Accounts Receivable balance, and ISG accepted and did not dispute the invoices. *Id* at ¶ 18 & Ex. F. The Products sold pursuant to these invoices were delivered to and accepted by ISG without complaint. *Id.* at ¶ 18.

On or about March 21, 2012, Winzey executed a continuing personal guaranty in favor of Fujifilm for both Notes (the "Guaranty"). *Id.* at ¶ 15 & Ex. D. The Guaranty recognized that ISG previously purchased Products from Fujifilm and that the outstanding debt to Fujifilm amounted to $4,104,783.17. *Id.* at Ex. D, ¶ C. Winzey entered into the Guaranty to induce Fujifilm to allow ISG to purchase Products without advance payment. *Id.* at ¶¶ D, E. Fujifilm formally advised Winzey that it would provide ISG's requested credit terms for

purchases of products only if Winzey unconditionally guaranteed the performance of all of ISG's obligations arising out of or in connection with its purchases of the Products. *Id.* at ¶ F. As the Guarantor, Winzey agreed, *inter alia*, to

> "hereby irrevocably and unconditionally guaranty, without offset or deduction, jointly and severally, the due and punctual payment by [ISG] when due of all monies now or hereafter due [Fujifilm] for Products purchased by [ISG], whether or not such purchases were made pursuant to the Product Sale Agreements and whether or not such monies are reflected in accounts receivable, promissory notes, or otherwise (collectively, 'Obligations')."

The Guaranty is made binding and enforceable irrespective of "any lack in the genuineness, validity, regularity or enforceability of any of the Debtor's obligations under the Products Sales Agreements or Debtor Promissory Notes." *Id.* The Guaranty further provides that "in the event that [ISG] fails to pay any Obligation for whatever reason whatsoever…[Winzey] will promptly pay or perform, as the case may be such Obligation(s) upon demand of [Fujifilm]." *Id.* Winzey expressly acknowledged that he was aware of the Promissory Notes executed prior to the date of the Guaranty and the outstanding debt owed by ISG to Fujifilm. *Id.*

In December 2012, ISG ceased making installment payment on the 2012 Note, leaving an unpaid principal and interest balance of $982,425.08. Dkt. # 22, ¶ 19. In January 2013, ISG ceased making payments to Fujifilm for the amounts owed as Accounts Receivable, leaving a current overdue balance of $2,110,047.31. *Id.* at ¶¶ 17, 20. Further, in March 2013, ISG stopped making installment payments on the 2011 Note, leaving an unpaid principal and interest balance of $71,159.57. *Id.* at ¶ 21. ISG admitted to defaulting on its payment under the Notes and on the Accounts Receivable balance in its Answer and asserted a counterclaim for tortious interference with ISG's business expectancies. *See* Dkt. # 15, ¶¶ 26-29, 33-35, 39-41, 69-74. Despite numerous demands from Fujifilm to ISG for prompt payment of the overdue amounts, ISG and Winzey have failed and refused to date to pay the amounts owed. Dkt. # 22, ¶ 22.

Plaintiff filed the instant Motion for Partial Summary Judgment on November 21, 2013, which the parties re-noted for January 10, 2014 (*see* Dkt. # 23), seeking judgment on its claims for breach of contract, for account stated, and for breach of guaranty, as well as

prejudgment interests, costs, and attorney's fees. *See* Dkt. # 21. Fujifilm contests that ISG's counterclaim for tortious interference with business expectancies has merit but refrains from moving for summary judgment on the counterclaim at this stage. *See Id.* at p. 1 n. 1. Upon withdrawal of lead counsel for Defendants, the Court re-noted the instant Motion on successive occasions, ultimately for consideration on March 7, 2014, upon request of Defendants. *See* Dkt. ## 31, 32, 33. In lieu of filing a response in opposition to summary judgment, sole remaining counsel for Defendants also filed a motion to withdraw, which the Court ultimately granted upon identifying good cause. *See* Dkt. ## 37, 42. To date, Defendants have failed to secure replacement counsel and are proceeding *pro se*, despite repeated warnings that failure of corporate Defendant ISG to secure new counsel may result in the dismissal of its counterclaim for failure to prosecute and the entry of default against it with respect to Fujifilm's claims. *See* Local Civil Rule 83.2(b)(3).

## **Analysis**

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) permits parties to move for summary judgment on all or part of their claims. Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (internal citations omitted).

The moving party bears the initial burden of production and the ultimate burden of persuasion. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must initially establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party

defeats a motion for summary judgment if she or he "produces enough evidence to create a genuine issue of material fact." *Nissan Fire*, 969 F.2d at 1103. By contrast, the moving party is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" at trial. *Celotex*, 477 U.S. at 322. "[T]he inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nonetheless, where a party fails to properly address another party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

### B. Choice of Law

Washington law governs the instant dispute pursuant to express choice-of-law terms in the Notes and the Guaranty. *See* Dkt. # 22, Ex. B. ¶ 12 ("This Note and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of Washington, without giving effect to principles of conflicts of law."); *id.* at Ex. C, ¶ 11; *id.* at Ex. D, ¶ 10. Federal courts sitting in diversity look to the forum state's choice of law rules in determining the controlling substantive law. *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Courts in Washington enforce an express choice of law provision in a contract so long as applying it does not violate the fundamental public policy of the forum state. *See McGill v.* Hill, 31 Wn.App. 542, 547, 644 P.2d 680 (1982), citing *Whitaker v. Spiegel, Inc.*, 95 Wash.2d 408, 623 P.2d 1147 as amended 95 Wash.2d 662, 637 P.2d 235 (1981); *see also Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1087 (9th Cir. 2011). Neither party has identified a public policy of Washington that is violated in the instant matter, and the Court identifies none. Hence, the Court applies the law of the State of Washington to the dispute.

### C. Breach of Promissory Notes

The elements of a claim for breach of a promissory note are identical to those for breach of contract. *Engeleiter v.* Shin, 956 F.2d 274, 1992 WL 33930, *1 (9th Cir. 1992). To

state a claim for breach of contract, a plaintiff must prove that (1) there is a valid and enforceable contract between the parties, (2) the contract imposed a duty, (3) defendants breached that duty, and (4) the breach caused damage to the claimant. *Citoli v. City of Seattle*, 15 Wash.App. 459, 476, 61 P.3d 1165 (2002). "Any failure to perform a contractual duty constitutes a breach, [] and an injured party is generally entitled to those damages necessary to put that party in the same economic position it would have occupied had the breach not occurred." *TMT Bear Creek Shopping Ctr., Inc. v. Petco Animal Supplies, Inc.*, 140 Wash.App. 191, 165 P.3d 1271, 1282 (2007) (internal citations omitted). Under Washington law, courts interpret contracts according to the intention of the contracting parties, which they determine "by focusing on the objective manifestations of agreement" rather than "unexpressed subjective intent." *Hearts Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005). In doing so, they give contract language its "ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.*

In the instant matter, it is undisputed that the 2011 and 2012 promissory Notes are valid and enforceable contracts. The undisputed facts show that the Notes imposed a duty on ISG to make payments in accordance with the specified payment schedules and that ISG breached that duty by failing to make timely payments. It is undisputed that ISG failed to make the last payment on the 2011 Note, for which it owes Fujifilm an unpaid principal and interest balance of $71,159.57. It's also undisputed that ISG failed to make the last seven payments on the 2012 Note, for which it owes Fujifilm an unpaid principal and interest balance of $982,425.08. As a result of ISG's breach and default on the promissory Notes, the Court accordingly finds that Fujifilm has suffered economic damages in the liquidated amount of $1,053,584.65, for which ISG is liable to Fujifilm.

### D. Unpaid Accounts Receivable Balance

Fujifilm contends that it is entitled to judgment against ISG for $2,110,047.31 in unpaid, overdue invoices under the doctrine of account stated. An account stated is "a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor." *Sunnyside Valley Irr. Dist. v. Roza Irr. Dist.*, 124 Wash. 2d 312,

315 (1994) (quoting 2 Restatement (Second) of Contracts § 282(1) (1981)). The Washington Supreme Court defines an account stated as "an admission by each party of the facts asserted and a promise by the debtor to pay the sum indicated." *Id*. at 315. Accounts stated generally concern open accounts, where the amount owed is difficult to fix precisely. *Rustlewood Ass'n v. Mason County*, 96 Wash.App. 788, 798, 981 P.2d 7 (1999). A bill of items rendered, or even a single transaction or claim, is sufficient to constitute such an account. *Griffith v. Rosenberg*, 166 Wash. 677, 681-82, 8 P.2d 284 (1932).

To establish an account stated, there must be "some form of assent to the account, that is, a definite acknowledgement of an indebtedness in a certain sum." *Id.* at 316 (quoting *Shaw v. Lobe*, 58 Wash. 219, 221, 108 P. 450 (1910)). The requisite agreement need not be explicit but may instead be "implied from the circumstances and acts of the parties." *Sunnyside Valley Irr. Dist.*, 124 Wash.2d at 316 (quoting *Shaw*, 58 Wash. at 221). The court can properly impute assent, for instance, "from delivery of a bank statement to which a depositor tacitly assents by holding it for a period of time without objection." *Id.* at 318; *see also Parrott Mechanical, Inc. v. Rude*, 118 Wn. App. 859, 865-67, 78 P.3d 1026 (2004) (holding that plaintiff established an account stated where it submitted invoices for services rendered, to which the debtors did not object within a reasonable period of time).

Fujifilm has met its burden of establishing an account stated in this case. Pursuant to the Distribution Agreements, ISG purchased Products from Fujifilm for which it assented to make payments within sixty days of the receipt of invoices at prices specified in the Agreements. *See* Dkt. # 22, Exs. A-F, ¶ 3.1(a)-(b). For each order, Fujifilm shipped the items requested and sent ISG invoices from June 30, 2011 to August 1, 2013. *See id.* at ¶ 18; Exs. E-F. In addition, the Agreements required ISG to provide its customers with product repair services. *See e.g., id.* at Ex. A, ¶ 2.2(c). ISG routinely returned Products to Fujifilm for repair and was invoiced accordingly. *See id.* at Exs. E-F. The Agreements further gave Fujifilm "the right to charge interest on any invoice amount not paid when due at the higher of one percent per month (12% per year) or the highest rate allowable by applicable law." *Id.* at Ex. A, ¶ 3.1(b). As a result, ISG possesses an Accounts Receivable balance of principal amounts invoiced to ISG for Products and services delivered ($2,147,834.37), plus interest ($22,152.98), minus allowable credits ($59,939.95), for a total of $2,110,047.31. ISG assented

to settling this account both explicitly, by signing the governing Distribution Agreements, and implicitly by accepting the invoices without any objection to date. ISG has furthermore admitted in its Answer that it took possession of the Products delivered and breached its obligation to make payments toward them, asserting that it has been unable to pay the Accounts Receivable due to illiquidity caused by actions of the Venezuelan government. *See* Dkt. # 15, ¶¶ 39-41. Accordingly, the Court finds that ISG is liable to Fujifilm for an account stated in the amount of $2,110,047.31.

### E. Breach of Guaranty

Fujifilm contends that it is entitled to summary judgment against James Winzey for breach of the Guaranty. "The contract of guaranty is an undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of any nonperformance by such other, the latter being bound to perform primarily." *Robey v. Walton Lumber Co.*, 17 Wash.2d 242, 255, 135 P.2d 95 (1943) (quoting 24 Am. Jur. 873-74, § 2). A guaranty may by its own terms nominate the consideration for which it is given. *F.C. Palmer & Co. v. Chaffee*, 129 Wash. 408, 412, 255 P. 65 (1924). When the intent of the parties to a guaranty "has been ascertained, they are bound." *Francher Cattle Co. v. Cascade Packing*, 26 Wash.App. 407, 410, 613 P.2d 178 (1980). A guaranty "should not be given an unfair and strained interpretation to restrict or diminish the guarantor's obligation." *Id.*

It is undisputed that the Guaranty is a valid and enforceable agreement between Winzey and Fujifilm. The Guaranty created in Winzey a duty to pay all monies due under promissory notes that ISG entered into before and after the date of the Guaranty's execution on March 21, 2012, as well as any outstanding debts owed by ISG to Fujifilm, including the Accounts Receivable Balance. *See* Dkt. # 22, Ex. D, ¶ 1. The Guaranty is supported by sufficient consideration nominated by its own terms, "to induce [Fujifilm] to allow [ISG] to purchase products without advance payment." *Id.* at Ex. D, ¶ E. Fujifilm performed its obligation under the agreement by allowing ISG to purchased Products without advance payment. Dkt. # 22, ¶ 16 & Ex. E (showing invoices for purchase orders executed after March 12, 2012). The Court finds that Winzey, by contrast, breached his duty under the agreement to

promptly pay any amounts due if ISG failed to pay monies due to Fujifilm. *Id.* at Ex. D, ¶ 1. As a result of Winzey's breach under the Guaranty, the Court finds that Winzey is liable to Fujifilm in the amount of $3,163,631.96, consisting of the amount presently due and owing under the Notes ($1,053,584.65) plus the amount present due and owing as Accounts Receivable ($2,110,047.13).

### F. Prejudgment Interest, Costs, and Attorney's Fees

"A trial court may award prejudgment interest if the amount claimed is liquidated." *Spradlin Rock Products, Inc. v. Public Utility Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 665, 266 P.3d 229 (2011). A claim is liquidated where there is evidence that "makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Id.* Washington law provides a statutory prejudgment interest rate of twelve percent per annum, where no different rate is provided by contract between the parties. RCW 19.52.010. Twelve percent per annum is the maximum interest rate allowed under Washington law. RCW 19.52.020.

The Court finds that in the instant matter, Fujifilm's claims for amounts owed under the Notes ($1,053,584.65) and for the Accounts Receivable balance ($2,110,047.13) as of the time of default are liquidated and subject to prejudgment interest. *See* Dkt. # 22, Exs. B-C, E. As to the applicable rate, the Notes provide that upon default "the entire principal balance and all accrued interest shall bear interest from the date of [default] at a default rate of five percent (5%) above the Interest Rate otherwise applicable under this Note." *See id.* at Ex. C, ¶ 4. The 2011 and 2012 Notes provide a standard Interest Rate of 10% and 11% per annum, respectively, to which 5% is added upon default. Hence, Fujifilm is entitled to prejudgment interest at the maximum statutory rate of 12 percent per annum from the date of default. *See* RCW 19.52.020; RCW 19.52.010.

Washington law provides that the prevailing party is entitled to attorney's fees and costs if the contract which is the subject of the action specifically provides for such an award. *See* RCW 4.84.330. The Court accordingly finds that Fujifilm is entitled to its reasonable costs, expenses, and attorney's fees incurred to enforce the Notes, as such an award is specifically authorized pursuant to the terms of the Notes and the Guaranty. *See* Dkt. # 22, Ex

B, ¶ 14 ("[ISG] shall be liable for all costs, expenses, and fees incurred by or on behalf of [Fujifilm] in connection with enforcement of this Note."); *id.* at Ex. C, ¶ 13 (same); *id.* at Ex. D, ¶ 1 (agreeing to be jointly and severally liable for all amounts owed to Fujifilm).

## **Conclusion**

For the reasons stated herein, the Court hereby ORDERS that Fujifilm's Motion for Partial Summary Judgment (Dkt. # 21) is GRANTED on Plaintiff's causes of action for breach of contract, amount stated, and breach of Guaranty in the amount of $3,163,631.06. The Court further finds that Plaintiff is entitled to prejudgment interest at the statutory amount of twelve percent per annum and for costs and attorney's fees to enforce the 2011 and 2012 promissory Notes. Plaintiff shall submit a motion for bill of costs and a motion for attorney's fees and prejudgment interest, detailing the final amounts for which it is owed and providing supportive documentation.

Remaining in this case is Defendants' counterclaim for tortious interference with business expectation. *See* Dkt. 15. As the Imaging Specialists Group, LLC, has failed to obtain a replacement attorney and is barred from proceeding on its own behalf, the Court hereby ORDERS that Defendant ISG's counterclaim is DISMISSED with respect to this business entity for failure to prosecute under Local Civil Rule 83.2(b)(3). The Court further ORDERS Defendant James Winzey to SHOW CAUSE within twenty (20) days of the entry of this Order why his counterclaim for tortious interference should not be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b). *See Henderson v. Duncan*, 779 F.2d 1421 (9th Cir. 1986) (affirming the inherent power of the district court to dismiss a case sua sponte for failure to prosecute). Failure to respond within twenty (20) days shall result in the dismissal without prejudice of Defendant's counterclaim.

Dated this 27th day of June 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE